Dorr-Oliver Incorporated, as Successor to Oliver United Filters Incorporated, Petitioner, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 86782. Filed April 16, 1963

*John M. Roberts*, for the petitioner.
*Roger A. Pott*, for the respondent.

OPINION

Forrester, *Judge:* Respondent has determined a deficiency of $12,-952.28 in income tax for the taxable year 1954. The sole issue is whether the deduction of certain accrued vacation pay constituted a change in method of accounting without the prior consent of respondent.

All of the facts have been stipulated and are so found.

Petitioner, Dorr-Oliver Inc., is a corporation organized and existing under the laws of the State of Delaware. It is the successor to Oliver United Filters Inc., a corporation organized under the laws of the State of Nevada, and will hereinafter be referred to as Oliver United or as petitioner. Oliver United was merged into petitioner on December 31, 1954. Prior to the merger, Oliver United's principal place of business was in Oakland, Calif. Oliver United filed its Federal income tax return for the taxable year 1954 with the district director of internal revenue at San Francisco, Calif.

At all times mentioned herein and for many years prior thereto, Oliver United maintained its books and prepared and filed its Federal income tax returns on a calendar year basis and employed an accrual method of accounting, except with respect to the item of vacation pay, as to which (prior to its taxable year 1954) it deducted only the amounts that it had actually paid its employees for vacation pay during that year.

In computing its Federal income tax for the year 1954, Oliver United deducted the total amount paid to certain of its employees covered by union agreements hereinafter described for vacations and holidays during 1954, and in addition, pursuant to section 462(c)(3)(a) of the 1954 Code, established a reserve for and deducted on its return an estimated accrued vacation pay expense of $78,800, covering

both shop and salaried employees. Upon repeal of section 462 on June 15, 1955, petitioner filed on December 12, 1955, Form 2175 in which the reserve for accrued vacation pay as of December 31, 1954, was reduced from $78,800 to $24,908.23. This is the deduction now at issue, and represents Oliver United's liability as of December 31, 1954, for vacation pay to its employees covered by certain collective bargaining agreements, referred to hereinafter. Oliver United has neither applied for nor received the consent of the Commissioner as to such change.

Oliver United at all times mentioned herein has had collective bargaining agreements with the following labor unions: (A) International Association of Machinists, District 115, Local 824, covering its Oakland, Calif., shop employees. (B) Warehouseman's Union, Local No. 853, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, covering its Oakland warehouse employees. (C) International Association of Machinists, District 128, Lodge 1648, covering its Hazleton, Pa., shop employees. (D) Office Employees International Union, Local 202, A.F. of L., covering its Hazleton office employees.

Each collective bargaining agreement provided for a vacation with pay each year to the employees covered thereby. If an employee had completed 30 calendar days' service with Oliver United as of April 30, he was entitled to a vacation with pay during the period from June 1 to December 31 of each year for a total number of hours equal to a certain percentage of the hours worked in the year period ending on the preceding April 30. The amount of the vacation payment was determined by the amount of the regular hourly wage of the employee, the period of service of the employee with Oliver United, and the number of hours that the employee had worked with Oliver United in the year period ending on the immediately preceding April 30. Prior to 1949, each employee covered by the agreement between the California Metal Trades Association and the International Association of Machinists, which was in effect from May 1, 1947, to April 1, 1949, received upon his termination of employment from Oliver United, the amount of unpaid vacation pay, based on the hours he had worked in the year period ending on the April 30 preceding his termination of employment. He had no right to receive any vacation pay for hours worked after April 30 until completion of the year period on the following April 30.

The provision described above was altered in 1949 by the agreement between the California Metal Trades Association and the International Association of Machinists, so that on and after April 1, 1949, upon termination of employment, an employee would receive a payment for vacation earned since the April 30 preceding his termination of

employment, even when the date of termination occurred before the subsequent April 30. On December 31, 1949, each employee covered by the agreement, who then had 90 days of service with Oliver United, had a vested right to a certain amount of vacation pay and Oliver United then had an accrued liability to each such employee for vacation pay which could have been computed.

The agreement covering the Oakland warehouse employees which had been similar to the agreement covering the Oakland shop employees prior to April 1, 1949, was changed in 1949 in the same manner as the agreement covering the Oakland shop employees. Agreements similar to that in effect from April 1, 1949, to July 1, 1950, for the Oakland shop employees were in effect for the Oakland shop employees and the Oakland warehouse employees from 1949 through 1954, and the liability of Oliver United for vacation pay to its Oakland employees covered by these agreements on the last day of each of such years could have been determined.

Alterations substantially similar in effect to the above 1949 changes were made in the agreements covering the Hazleton shop and office employees in 1952, so that the provisions pertaining to vacation pay in the Hazleton agreements were substantially similar to the provisions in the Oakland agreements for the years 1952, 1953, and 1954, and with the same result as to the liability for vacation pay of Oliver United.

Prior to its taxable year 1954 Oliver United in computing its Federal income taxes had deducted only the amount that it had actually paid its employees for vacation pay during the year involved, notwithstanding the existence of the above-described agreements.

On December 31, 1954, Oliver United had incurred a liability to its employees covered by the union agreements for vacation pay earned since April 30, 1954. The aggregate amount of this liability was $24,908.23. Its obligation to pay this amount in 1955 accrued during the period from May 1 to December 31, 1954.

It is stipulated that of the $62,242.37 paid by Oliver United to its employees covered by said collective bargaining agreements for vacations and holidays during 1954, approximately $25,618.96 represented pay for seven holidays during said year and approximately $36,823.41 represented pay for vacations made pursuant to said agreements.[1] Of this last amount aproximately $24,548.94 was attributable to services performed by such employees prior to December 31, 1953, and approximately $12,274.47 was attributable to services performed after December 31, 1953. To summarize, the amounts deducted for vacation

---

[1] So stipulated. The $200 difference is unexplained.

pay and holidays on Oliver United's Federal income tax return for 1954 can be shown as follows:

Vacation pay and holiday pay actually paid during 1954, including an amount attributable to services performed prior to December 31, 1953, and an amount attributable to services performed after December 31, 1953_____ [2] $62, 242. 37

Vacation pay accruing in the 8-month period ending December 31, 1954 _____ 24, 908. 23

Total vacation and holiday pay deducted on Oliver United's Federal income tax return for 1954_____ 87, 150. 60

The total of salaries and wages deducted by Oliver United in computing its Federal income tax for 1954 was $2,328,324.66, of which $982,552.83 was paid to those employees of Oliver United who were covered by the collective bargaining agreements referred to herein.

Oliver United's surtax net income for the purpose of computing the alternative tax on its Federal income tax returns for the years 1949 through 1954, was as follows:

| 1949 | $1, 190, 008. 25 |
| 1950 | 536, 517. 33 |
| 1951 | 1, 464, 350. 67 |
| 1952 | 1, 716, 253. 94 |
| 1953 | 1, 452, 987. 64 |
| 1954 | 701, 074. 97 |

The parties agree that a taxpayer cannot make a change in accounting method without the Commissioner's consent, and the precise issue before us is whether respondent was correct in categorizing the action of Oliver United as such a change in method.

In enacting section 446 [3] of the Internal Revenue Code of 1954,[4]

[2] See footnote 1.

[3] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

(c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.

(d) TAXPAYER ENGAGED IN MORE THAN ONE BUSINESS.—A taxpayer engaged in more than one trade or business may, in computing taxable income, use a different method of accounting for each trade or business.

(e) REQUIREMENT RESPECTING CHANGE OF ACCOUNTING METHOD.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

[4] All statutory references are to the I.R.C. 1954.

Congress stated (S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 300 (1954)) :

In subsection (c) the permissible methods of accounting subject to the provisions of subsections (a) and (b) are enumerated. All methods of accounting recognized under existing law are continued. In addition one or more hybrid methods may be authorized in the regulations issued under paragraph (4). * * *

Specifically referring to section 446 (e), it said :

Subsection (e) codifies existing regulations. A change in the method of accounting includes a change in the general method of accounting such as a change from the cash receipts and disbursements method to an accrual method, or vice versa, or a change from the cash or an accrual method to the long-term-contract method, or vice versa. It also includes a change in the treatment of a *material* item such as a change in the method of valuing inventory, or a change from an accrual method without estimating expenses to an accrual method with estimated expenses, or vice versa, or a change in the method of depreciating any property. *A change in the method of accounting is a substantial change as distinguished from each change in the treatment of each item.* In computing taxable income, *a taxpayer who changes his general method of accounting or who treats material items inconsistently* must obtain the consent of the Secretary or his delegate unless an express provision of this chapter permits such change at the election of the taxpayer without such consent. [Emphasis supplied.]

Pursuant to the committee reports, respondent in 1957 promulgated section 1.446–1(e)(2)(i), Income Tax Regs., which provides as follows :

Sec. 1.446–1    General rule for methods of accounting.

(e) *Requirement respecting the adoption or change of accounting method.* * * *

(2)(i) Except as otherwise expressly provided in chapter 1 of the Code and the regulations thereunder, a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. A change in the method of accounting includes a change in the over-all method of accounting for gross income or deductions, or a change in the treatment of a material item. Consent must be secured whether or not a taxpayer regards the method from which he desires to change to be proper. Thus a taxpayer may not compute his taxable income under a method of accounting different from that previously used by him unless such consent is secured.

Thus, the issue before us may be stated : Did Oliver United make a *substantial* change of a *material* item ?

No clear standards exist for determining materiality. The amount of vacation pay accrued by Oliver United for the 8-month period in 1954 was only as to those employees covered by the collective bargaining agreements, and amounted to $24,908.23. On an annual basis this amounts to about $37,500.

Petitioner argues that vacation pay for only part of its employees is a minor item; that the "erroneous" treatment only began in 1949; and that income is not distorted. It concludes therefore that it may *ex parte* "right a self-inflicted wrong." Initially we cannot understand how the deduction of vacation pay earned over a 20-month period against income from a 12-month period does not distort such income but rather, in petitioner's words, "make[s] it more clearly ascertainable."

Petitioner contends that $24,908.23 is both absolutely insubstantial and relatively minimal when compared with Oliver United's total payroll, gross sales, taxable income, and any other significant standard. It concludes that the change can be made *ex parte* by the taxpayer unless the item changed is a major source of revenue or deduction of a taxpayer.

We are unimpressed with petitioner's resultant percentage figures. In our view $25,000 is seldom insubstantial, and we feel it is far more significant that the amount attempted to be accrued is approximately 28 percent of the total vacation and holiday pay deducted on Oliver United's 1954 return and 40 percent of all such pay actually paid in 1954. If the $24,908.23 figure is annualized, the above percentage figures become 43 and 60 percent. These attempted changes of the vacation and holiday pay item are substantial, and the item itself, amounting to $87,150.60, is material to any significant standard under the facts of this case.

Petitioner relies heavily on *American Can Co.*, 37 T.C. 198 (1961), on appeal (C.A. 2). In that case, taxpayer was permitted to change his treatment of vacation pay from the cash basis to an accrual basis without the permission of the Commissioner. However, the taxable year involved was 1953, and we stated (p. 215):

The contrary view would in effect sanction hybrid accounting practices and would treat as a "system of accounting" a mixture of accrual and cash items. It seems all too clear that, regardless of the law under the 1954 Code,[9] no such hybrid systems are permissible under the 1939 Code or prior revenue laws. * * * [Footnote omitted.]

We regarded a hybrid system as not permissible under the Internal Revenue Code of 1939, and concluded that the only allowable methods were the treatment of all items on the cash basis or the treatment of all items on the accrual basis. We were thus compelled to find taxpayer's prior system to have been erroneous. We said (pp. 217–218):

It has been clear, at least as far back as the *Anderson* case, that corrections of individual items to conform to the taxpayer's basic system of accounting are not discretionary either for the taxpayer or the Commissioner. See *Security*

*Flour Mills Co.* v. *Commissioner*, 321 U.S. 284, where the Supreme Court said (pp. 285-287):

the well understood and consistently applied doctrine [is] that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on the basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer. * * * *The uniform result has been denial both to government, and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount.* * * * [Emphasis supplied.]

Similarly here, the corrections under consideration are necessary for the determination of petitioner's true income under an accrual method of accounting, and it is a matter of no moment whether such corrections are sought by the Government or the taxpayer.

While *American Can* reflects the law under the 1939 Code, the 1954 Code brought about a critical change in respect of the problem before us. Prior to 1954, hybrid methods of accounting were not recognized and a change in the method of treatment of a particular item was not regarded as a change in the "method of acounting" requiring the prior consent of the Commissioner. See *Marquardt Corporation*, 39 T.C. 443 (1962), following *American Can*. But hybrid methods of accounting may now be recognized under the 1954 Code, and consent must be obtained before a change in the method of treating material items is adopted. As heretofore indicated, we think that vacation pay is a material item in the taxpayer's accounting system, and that prior consent was required as a condition for making the change in question.

Hybrid methods of accounting are permissible for the year before us. Oliver United contends it had not been using a proper method to clearly reflect its income, but we find no evidence in the record showing that the consistent treatment of this item by Oliver United since 1949 did not reflect its income with sufficient clarity. It is not true that the only way to clearly reflect vacation pay is by the accrual method. We conclude that under the facts of this case, the consistent treatment of this recurring item constitutes a method of accounting under the 1954 Code and that such item is material.

We therefore hold that Oliver United made a change in its accounting method in 1954, and since approval of the Commissioner was neither sought nor received, its income cannot be computed in accordance with this changed method.

*Decision will be entered for the respondent.*