Hulond R. and Mary R. Ryan, Petitioners, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 94778. Filed May 14, 1964.

*J. Gilmer Blackburn,* for the petitioners.
*Ford P. Mitchell,* for the respondent.

Drennen, *Judge:* Respondent determined deficiencies in petitioners' income tax for the years 1956 and 1957 in the amounts of $17,584.80 and $34,262.88, respectively. By stipulation petitioners conceded all adjustments in the notice of deficiency except adjustments with respect to dealer reserve income.

The only issues remaining for decision are (1) whether petitioners' change in method of reporting dealer reserve income for their taxable year 1957 constituted a change in method of accounting within the meaning of section 481, I.R.C. 1954,[1] so as to make that section applicable, and (2) if so, whether petitioners made a valid and effective election under section 4(a) of the Dealer Reserve Income Adjustment Act of 1960 (Pub. L. 86-459, 74 Stat. 124) not to have section 481 apply.

### FINDINGS OF FACT

The stipulated facts are so found.

Petitioners were husband and wife residing in Decatur, Ala., during the years 1955 to 1959, inclusive. They filed timely joint Federal income tax returns for those years with the district director of internal revenue, Birmingham, Ala.

During the years involved and for a number of years prior thereto, Hulond R. Ryan (hereinafter referred to as petitioner) operated a retail furniture and appliance business as a sole proprietorship in Decatur, Sheffield, and Huntsville, Ala. On January 1, 1958, petitioner caused to be formed a separate corporation to operate each of his stores. He transferred to these corporations his inventory and certain fixtures in exchange for the stock and notes of the new cor-

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

porations. Thereafter petitioner continued to operate his sole proprietorship for the purpose of purchasing furniture which he in turn sold to the new corporations. In addition, he continued to hold and liquidate certain accounts receivable which were owned by the sole proprietorship.

In his business petitioner often sold furniture and appliances on an installment basis, taking a downpayment and/or trade together with installment paper showing a time or deferred balance payable over a period of months.

At times petitioner sold the installment paper to various finance companies on the usual terms and arrangements common in the business whereby the finance companies would pay petitioner the major portion of the contract in cash and credit the balance to a reserve account in the name of petitioner. The amount credited to this account is commonly referred to as "dealer reserve income" and will be so referred to here.

The balances in petitioner's dealer reserve account and increases therein for the years in question were as follows:

| Year | Balance— | | Increase |
|---|---|---|---|
| | Jan. 1 | Dec. 31 | |
| 1956 | $66,721.50 | $94,074.51 | $27,353.01 |
| 1957 | 94,074.51 | 117,720.61 | 23,646.10 |

During the years involved and prior thereto, petitioner kept his books and reported his income on the accrual method of accounting. However, for years prior to 1957 petitioner reported dealer reserve income on his books and on his returns when the income was actually paid to him by the finance companies, rather than when it was credited to his dealer reserve accounts by the finance companies.

For the year 1957, on the advice of the certified public accountant who supervised petitioner's books and prepared his tax returns and based on a revenue ruling issued in 1957 indicating that dealer reserve income should be accrued in the year the installment paper was sold to the finance companies (Rev. Rul. 57-2, 1957-1 C.B. 17), petitioner changed his treatment of dealer reserve income. On December 31, 1957, the following entry was made on petitioner's records:

| | Debit | Credit |
|---|---|---|
| Finance reserve | $117,720.61 | |
| Reserve for repossessions | | $29,430.15 |
| Sales of new appliances | | 88,290.46 |

As of December 31, 1957, petitioner had not been paid any of the $117,720.61 balance in the dealer reserve accounts by the finance companies.

During 1958 petitioner sold installment paper from which he had dealer reserve income.

Petitioner went out of the furniture business in 1960.

Petitioner never requested nor received consent of the Commissioner of Internal Revenue to change his treatment of dealer reserve income. Petitioners' returns for years prior to 1957 were audited by the Internal Revenue Service and no changes were made in the treatment of dealer reserve income.

By letter dated August 24, 1960, petitioner wrote the director of internal revenue, Birmingham, Ala., stating that his tax returns were under audit by the Internal Revenue Service, that the revenue agent had proposed adjustments under section 481 of the Code, that in his opinion section 481 did not apply to the proper accrual of dealer reserve income because it was not a change in method of accounting; but that should he be mistaken, he thereby made the election under section 4 of the Dealer Reserve Income Adjustment Act of 1960 not to have section 481 apply.

By letter dated August 30, 1960, a representative of the Internal Revenue Service wrote to petitioner, referring to petitioner's letter of August 24, and advising that for an election to be valid it must show a clear intention to make the election under section 4(a), it must contain information sufficient to establish eligibility to make the election, it must show the taxable years to which the election applies, and the electing taxpayer must on or before November 30, 1960, file amended returns for the years *in* which the election is made.

By letter dated December 8, 1960, petitioner's attorney wrote to the above representative of the Internal Revenue Service advising that petitioner's dealer reserve problems had been under discussion at an informal conference with a conferee since the letter of August 30 and the parties had been unable to reach agreement at that time, and at the suggestion of the conferee petitioner wished to advise that he desired that the election under section 4(a) previously referred to in the letter of August 24 be made, that petitioner transferred receivables to finance companies in 1958 and established a reserve of 25 percent of the amount of the (dealers) reserves as income to be received in subsequent years, that the election was to apply to the year 1958, and that it would be impossible for petitioner to file amended returns for the years in question because to do so would revoke petitioner's position that section 481 did not apply to this transaction.

By letter dated December 15, 1960, the representative of the Internal Revenue Service wrote to petitioner's attorney advising that the election was not valid, referring to the failure of petitioner to file amended returns.

Petitioners have not filed amended returns for any of the years 1956, 1957, or 1958.

The notice of deficiency was issued prior to the running of the statute of limitations for the year 1957.

The principal issue is whether section 481 is applicable and permits respondent to include in petitioner's income for the year 1957 the entire amount of the balances in petitioner's dealer reserve accounts as of the end of 1957. Petitioner agrees that the increase in the reserve during the year 1957 is includable in his income for 1957 but claims that the balance in the reserve as of the beginning of the year 1957 was properly accruable in prior years, which are now barred, and cannot be included in income for 1957. Petitioner's argument is twofold—first that section 481 was not intended to and does not apply to a situation such as is here involved and, second, that if it would normally apply, he made a valid election under section 4(a) of the Dealer Reserve Income Adjustment Act of 1960 (Pub. L. 86–459, 74 Stat. 124—hereinafter referred to as Dealer Reserve Act and/or Act) not to have it apply.

We must first determine whether petitioner's purported election under section 4(a) of the Dealer Reserve Act was effective to make section 481 of the Code inapplicable to this case. Respondent argues first that the Act itself is inapplicable to petitioner and, second, that even if applicable, petitioner's election under section 4(a) was invalid because petitioner did not comply with all the requirements of the regulations (sec. 1.9002–8 (b), (c), Income Tax Regs.).

Section 2 of the Dealer Reserve Act provides:

This Act shall apply to any person who, for his most recent taxable year ending on or before June 22, 1959—

·(1)ᵢ computed, or was required to compute, taxable income under an accrual method of accounting,

(2) treated any dealer reserve income, which should have been taken into account (under the accrual method of accounting) for such taxable year, as accruable for a subsequent taxable year, and

(3)ᵢ before September 1, 1960, makes an election under section 3(a) or 4(a) of this Act.

Petitioner's most recent taxable year ending on or before June 22, 1959, was his taxable year ending December 31, 1958. For the Dealer Reserve Act to apply, petitioner, for that year, must have had dealer reserve income and treated such income, which should have been taken into account in 1958 under petitioner's accrual method of accounting, as accruable for a subsequent taxable year.

The evidence with respect to petitioner's income for the year 1958 is at best vague and we are unable to determine from the record whether petitioner had dealer reserve income in 1958 which he treated as accruable for a subsequent taxable year. It is our impression from the

record that for the year 1957 petitioner's accountant, in reliance on Rev. Rul. 57–2, 1957–1 C.B. 17, changed the treatment of petitioner's dealer reserve income to include it in income for the year in which it was credited to his account by the finance companies, as directed by the revenue ruling. This the accountant did by debiting petitioner's dealer reserve account with the entire amount of the balance therein as of December 31, 1957 ($117,720.61), and crediting 75 percent of that amount ($88,290.46) to sales in 1957 and the remaining 25 percent ($29,430.15) to a reserve for repossessions. Apparently the 25 percent was not taken into income for 1957 but was fed into income in subsequent years. Petitioner agrees that respondent's disallowance of the reserve for repossessions was correct.

For the year 1958 there is evidence that in January of that year petitioner did discount several notes or contracts for appliance sales with General Electric Credit Corp. and that a part of the face amount of those notes or contracts was credited to petitioner's reserve account. However, the evidence is vague as to how petitioner reported the amount credited to the reserve account. The accountant testified on direct examination that there was dealer reserve income in 1958, part of which was reported in 1958 and 25 percent of which was reported in subsequent years, but no details were supplied. On cross-examination he testified that this resulted from crediting 25 percent of it to a reserve for repossessions, but we do not know whether the entire dealer reserve income was included in sales and a deduction claimed for an addition to the reserve for repossessions or how it was handled in computing taxable income for 1958. It seems likely that if the accountant was attempting to comply with Rev. Rul. 57–2, *supra*, and pay tax on the dealer reserve income as he testified, the entire amount of the dealer reserve income would have been taken into income in 1958. This finds support in the fact that in the notice of deficiency respondent decreased "dealer reserve income" reported by petitioner in 1958 by $11,037.67 and in 1959 by $18,392.48. These two amounts total the $29,430.15 petitioner credited to the reserve for repossessions for 1957. No other adjustments for dealer reserve income were made in the notice of deficiency for 1958 or 1959. It seems likely that had petitioner failed to include all dealer reserve income properly accruable in his reported income for 1958 and 1959, respondent would have added it to reported income for those years.

The burden is on petitioner to prove that the Dealer Reserve Act applied to him. Proof that petitioner included in income for 1958 dealer reserve income that was properly accruable in 1957 would not make the Act applicable to this petitioner. We conclude that petitioner has failed to prove that the Act applied to him. Consequently,

its provisions cannot be used in determining petitioner's correct taxable income for the years before us.

The above conclusion makes unnecessary a consideration of whether petitioner made a valid and effective election under section 4(a) of the Act not to have section 481 apply. We note in passing, however, that section 4(a) of the Act contemplates that the electing taxpayer make "a change in the treatment of dealer reserve income to a method proper under the accrual method of accounting" in order to have the change treated as "not a change in method of accounting in respect of which section 481 of the Internal Revenue Code of 1954 applies." Petitioner admits that respondent was correct in disallowing the credit to the reserve for repossessions.

The next question is whether petitioner's change in the treatment of dealer reserve income in 1957, absent the benefit of the election under section 4(a) of the Dealer Reserve Act, constituted a change in the method of accounting within the meaning of section 481 of the Code. If so, section 481 provides that there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted.[2]

In his notice of deficiency respondent, rather than deny petitioner the right to make the change without prior consent,[3] included in petitioner's income for 1957 the entire balances in petitioner's dealer reserve accounts held by the finance companies as of December 31, 1957, thereby accepting petitioner's treatment of this item on the 1957 return in part, but disallowing any reduction for the reserve for repossessions, set up by petitioner as 25 percent of the balance in the accounts. As heretofore noted, petitioner concedes that respondent did not err in disallowing the reserve for repossessions, but claims that under *Commissioner* v. *Hansen*, 360 U.S. 446 (1959), the proper treatment of the dealer reserve income under the accrual method of accounting was to include it in income in each of the years it was credited to petitioner's accounts by the finance companies; consequently the balances in the dealer reserve account as of January 1, 1957, were properly includable in income for prior years. From this he argues that his change in the treatment of dealer reserve income in his return for 1957

---

[2] SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

[3] See sec. 446(e), I.R.C. 1954.

was not a change in method of accounting within the meaning of section 481 but was merely the correction of an error in accounting on the accrual basis, and therefore section 481 does not apply; and if section 481 does not apply none of the adjustments authorized thereby may be made and collection of tax on the income that should properly have been included in taxable income for years prior to 1957 is now barred by the statute of limitations.

Petitioner buttresses this argument by reliance on the principle that income taxes are assessed on an annual basis and an error in computation of tax for one year cannot be corrected by making an erroneous computation of tax for a later year, and inasmuch as under the accrual method of accounting his dealer reserve income for years prior to 1957 had a taxable "situs" in the earlier years, section 481 could not be intended to apply to the situation here because to so apply it would violate the foregoing principle. Petitioner concludes that the principle of section 481 had its origin in *William Hardy, Inc.* v. *Commissioner*, 82 F. 2d 249 (C.A. 2, 1936),[4] which involved a change from the cash basis to the accrual basis, leaving the accounts receivable at the end of the preceding cash basis year with no proper tax "situs" so that one had to be supplied, and that section 481 was intended to apply only where an item of income had no taxable "situs" as a result of the change in method of accounting.

Petitioner's theory presents a rather ingenious method of pulling oneself up by one's bootstraps, but it does not hold water when examined in the light of the legislative history of section 481 and the Dealer Reserve Act, and recent decisions of the courts.

No provisions similar to those contained in section 481 appeared in the Internal Revenue Code prior to the adoption of the 1954 Code. There had been a conflict in court decisions with respect to the right of the Commissioner to make adjustments in the year of change to avoid omissions of income or doubling up of deductions where a taxpayer's method of accounting was changed. However, by 1953 the principle had become pretty well established that if the change was initiated by the taxpayer such adjustments could be made, but if the change was initiated by the Commissioner such adjustments could not be made. See *Fruehauf Trailer Co.*, 42 T.C. 83 (1964). Section 481, as proposed in the original House bill (H.R. 8300, 83d Cong., 2d Sess.), required that those adjustments determined to be necessary solely because of the change to prevent amounts from being duplicated or omitted be taken into account in the year of change, regardless of who initiated the

---

[4] This decision overruled a Memorandum Opinion of this Court but the Court of Appeals for the Second Circuit in effect overruled its decision in the *Hardy* case in *Commissioner* v. *Dwyer*, 203 F. 2d 522 (1953), affirming a Memorandum Opinion of this Court.

change,[5] but permitted a computation of the tax by spreading the income over several years if the adjustments resulted in an increase in taxable income for the year of change of more than $3,000.

Turning first to petitioner's basic argument that the change in his treatment of dealer reserve income was not a change in method of accounting within the meaning of section 481 but was merely the correction of an error in accounting on the accrual basis, while there was some difference of opinion on this issue under the 1939 Code, see *Commissioner* v. *O. Liquidating Corporation*, 292 F. 2d 225 (C.A. 3, 1961), reversing a Memorandum Opinion of this Court, certiorari denied 368 U.S. 898 (1961); *Wright Contracting Co.* v. *Commissioner*, 316 F. 2d 249 (C.A. 5, 1963), affirming 36 T.C. 620 (1961), certiorari denied 375 U.S. 879 (1963), rehearing denied 375 U.S. 981 (1964); *American Can Co.* v. *Commissioner*, 317 F. 2d 604 (C.A. 2, 1963), reversing in part 37 T.C. 198 (1961), certiorari denied 375 U.S. 993 (1964), much of the basis for this conflict appears to have been removed by the adoption of section 446 of the 1954 Code, which specifically recognizes hybrid methods of accounting. As pointed out by this Court in *Dorr-Oliver, Inc.*, 40 T.C. 50 (1963), under section 446 of the 1954 Code, the consent of the Secretary or his delegate must be obtained before a change in the method of treating a *material item* can be made. This finds support in the congressional committee reports with respect to section 446, see S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 300 (1954), and in section 1.446.1, Income Tax Regs., both of which clearly state that a change in the method of accounting includes a change in the treatment of a material item. See also *Fruehauf Trailer Co., supra.*

There is no question that petitioner's dealer reserve income was a material and a substantial item in computing his taxable income, so we conclude that the change in the treatment of petitioner's dealer reserve income was a change in petitioner's method of accounting within the meaning of section 481. See *Graff Chevrolet Co.* v. *Campbell*, —— F. Supp. — (N.D. Tex. Oct. 1963).

With reference to petitioner's supporting argument that section 481 was intended to apply only where an item of income has no taxable "situs" as a result of the change in method of accounting, and hence was not intended to apply here where the dealer reserve income was clearly accruable in the year it was credited to his account, we find nothing to support this argument; and the decision of this Court in

---

[5] The Senate amended the section by adding an exception which precluded taking into account any adjustment with respect to a taxable year prior to 1954 (see S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 307 (1954), and the section was further amended by the Technical Amendments Act of 1958 to permit adjustments with respect to years prior to 1954 if the change was initiated by the taxpayer (see S. Rept. No. 1983, 85th Cong., 2d Sess., pp. 44, 45 (1958), 1958–3 C.B. 965). However, these amendments are not pertinent to the issues we have here.

*Fred Pursell*, 38 T.C. 263 (1962), affirmed per curiam 315 F. 2d 629 (C.A. 3, 1963), is contrary in principle.

The Senate Finance Committee report on section 481 (S. Rept. No. 1622, *supra* at 307) states that "adjustments must be made in order that every item of gross income or deduction is taken into account and that none are omitted." It also states that "It is contemplated that such transitional adjustments as are required will take into account inventories, accounts receivable, and accounts payable, but that they should not be limited to those categories [p. 308]." There is nothing in the language of the statute itself, nor in the committee reports, which would support petitioner's argument that section 481 was intended to apply only to adjustments for items which had no taxable "situs" prior to the change. To the contrary the intent of Congress, as indicated by the language of the statute and the committee reports, would appear to have been to require adjustments with respect to all items necessary to prevent amounts from being omitted or duplicated. The adjustment proposed here by respondent is clearly one made necessary by petitioner's change in treatment of dealer reserve income in order to prevent that amount from being omitted from income.

In addition we think the Dealer Reserve Act itself affords congressional recognition that section 481 does apply to changes in the treatment of dealer reserve income. While the heading for section 3 [6] of the Act is "ELECTION TO HAVE SECTION 481 APPLY," which might imply that without the election section 481 would not apply, the election actually provided by the section, and the obvious purpose for the provision, is to have the change in method of accounting treated, for purposes of section 481, as a change in method of accounting *not initiated by the taxpayer;* in other words, to limit the adjustments to be made under section 481 with respect to dealer reserve income to only those items with respect to years after 1953. Section 4 [7] of the

---

[6] SEC. 3. ELECTION TO HAVE SECTION 481 APPLY.

(a) GENERAL RULE.—If—

(1) for the year of the change (determined under subsection (b)), the treatment of dealer reserve income by any person to whom this Act applies is changed to a method proper under the accrual method of accounting (whether or not such person initiated the change),

(2) *such person makes an election under this subsection, and*

(3) such person does not make the election provided by section 4(a),

then, for purposes of section 481 of the Internal Revenue Code of 1954, the change described in paragraph (1) shall be treated as a change in method of accounting not initiated by the taxpayer.

[7] SEC. 4. ELECTION TO HAVE SECTION 481 NOT APPLY; PAYMENT IN INSTALL-MENTS.

(a) GENERAL RULE.—If a person to whom this Act applies makes an election under this subsection, then for purposes of chapter 1 of the Internal Revenue Code of 1954 (and the corresponding provisions of prior law) a change in the treatment of dealer reserve income to a method proper under the accrual method of accounting shall be treated as not a change in method of accounting in respect of which section 481 of the Internal Revenue Code of 1954 applies. Any election under this subsection shall apply to all taxable years ending on or before June 22, 1959 (whether the provisions of the Internal Revenue Code of 1954 or the corresponding provisions of prior law apply), for which the assessment of any deficiency, or for which refund or credit of any overpayment, whichever is applicable, was not, on June 21, 1959, prevented by the operation of any law or rule of law.

Act provides an election to have a change in the treatment of dealer reserve income to a proper method under the accrual method of accounting treated as *not* a change in method of accounting in respect of which section 481 applies. There would appear to be little reason for this election if section 481 did not otherwise apply to changes in treatment of dealer reserve income. When read together these two sections of the Act appear to recognize that without the election provided by section 4 of the Act, section 481 of the Code would apply to such a change and that section 3 of the Act permits an election to limit the application of section 481 to dealer reserve income for the years to which the 1954 Code applies, regardless of the proviso added by the Technical Amendments Act of 1958, even where the change is initiated by the taxpayer. See S. Rept. No. 1045, 86th Cong., 2d Sess., p. 6 (1960), 1960–1 C.B. 826.

Petitioners rely on the rule of such cases as *Security Flour Mills Co.* v. *Commissioner*, 321 U.S. 281 (1944); *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359 (1931); *Estate of Samuel Mnookin*, 12 T.C. 744 (1949), affd. 184 F. 2d 89 (C.A. 8, 1950); *Policy Holders Agency, Inc.*, 41 T.C. 44 (1963), that income taxes are assessed on the basis of annual returns and that an error made in the computation of tax for one year cannot be corrected by making an erroneous computation of tax for a later year. Most of those cases were decided before the adoption of sections 446 and 481 of the 1954 Code and were not concerned with the provisions of those sections, which apply here. While *Policy Holders Agency, Inc.*, *supra*, involved the year 1958, neither section 446 nor 481 was mentioned and there was no discussion of whether the taxpayer's transfer of the balance in the dividends-stored account to retained earnings was a change in method of accounting to which section 481 might apply. In any event we do not think it is inconsistent with the rule enunciated by the above cases for Congress to provide that where there is a change in method of accounting there shall be taken into account those adjustments which are necessary solely by reason of the change to prevent amounts from being omitted or duplicated.

And petitioner's argument that to adopt this interpretation of section 481 would open up a Pandora's box of impossible complications because the statute of limitations would never toll on any type of accounting error, is likewise unsound. Both the House and Senate committee reports on section 446(e) of H.R. 8300 (see H. Rept. No. 1337, 83d Cong., 2d Sess., p. A158 (1954), and S. Rept. No. 1622, *supra*) make it clear that a change in method of accounting "is a substantial change as distinguished from each change in the treatment of each item."

As we understand petitioner's argument with reference to the statute of limitations it is that if section 481 *does not* apply to his

change in the treatment of dealer reserve income, then the collection of tax on his dealer reserve income which, under *Commissioner* v. *Hansen, supra,* was properly accruable in years prior to 1957, is now barred by the statute of limitations. He does not argue that if section 481 *is* applicable nevertheless no adjustment can be made with respect to items of income which were properly accruable in years which are now barred by the statute of limitations, and we do not consider the latter argument to be before us. However, see *Graff Chevrolet Co.* v. *Campbell, supra,* and *Fred Pursell, supra.*

We conclude that section 481 of the Code is applicable to petitioner's change in treatment of dealer reserve income for the year 1957, that it permits the adjustments made with respect thereto by respondent in his notice of deficiency, and that petitioner's effort to have section 481 not apply by his attempted election under section 4 (a) of the Dealer Reserve Act was ineffective.

For purposes of determining whether petitioner is entitled to have his income tax for 1957 computed under any of the alternatives provided in section 481,

*Decision will be entered under Rule 50.*