ALBERT D. ROBERTS AND KATHLEEN ROBERTS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1397–63. Filed February 23, 1965.

*Donn Kemble*, for the petitioners.
*Marion Malone*, for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax for the taxable years 1957 and 1958 in the respective amounts of $27,229.27 and $26,470.13.

The parties having agreed that the respondent properly included in the petitioners' taxable income for the taxable year 1957 the amount of $49,857.63 representing dealer reserve balances as of the end of that year, and that the respondent erred in including the same amount in taxable income for the taxable year 1958 and in disallowing for 1958 the claimed medical expense deduction of $485, the only issue remaining for decision is whether the petitioners are entitled, under the Dealer Reserve Income Adjustment Act of 1960, to pay in installments the deficiency in tax resulting from the inclusion of the amount of $49,857.63 in taxable income for the taxable year 1957.

The facts have been stipulated and the stipulations are incorporated herein by this reference.

The petitioners are husband and wife who reside at Garden Grove, Calif. They filed joint Federal income tax returns for the taxable years 1957 and 1958 with the district director of internal revenue at Los Angeles, Calif. The petitioner Kathleen Roberts is involved only by reason of having filed joint income tax returns with the petitioner Albert D. Roberts, who hereinafter will be referred to as the petitioner.

During the spring of 1957 the petitioner commenced a new and used car sales business as a sole proprietorship under the name of Al Roberts Plymouth. He reported his net income from such business for the taxable year 1957 on an accrual method of accounting and his other items of income and deduction (not connected with such business) for the taxable year 1957 and subsequent years on the cash method of accounting.

In the conduct of this business, and with respect to credit sales, petitioner normally would sell automobiles to customers on conditional sales contracts, or, in the alternative, he would accept a promissory note payable in installments for the balance of the purchase price of an automobile. He would then sell such installment paper to various finance companies.

In the course of the sale of such installment paper to the various finance companies, the finance company would reserve or hold back, as a loss reserve, a portion of the balance of the sales price due the petitioner, which reserve was not to exceed a certain specified percentage of the total unpaid balances on all outstanding installment paper purchased by the finance companies. Any amount withheld as a loss reserve which was in excess of such percentage reserve requirement was to be returned to petitioner, unless the petitioner was in default in any of his obligations to the finance companies, the finance companies stopped purchasing installment paper from him, or if he ceased doing business as a going concern.

At December 31, 1957, the balance of the dealer reserve accounts or holdbacks standing to the credit of petitioner was $49,857.63. Petitioner did not report such balance as income for the taxable year 1957.

In December 1957, petitioner formed a corporation under the laws of the State of California named Al Roberts Plymouth, Inc., hereinafter referred to as the corporation.

On January 1, 1958, petitioner transferred all the assets and liabilities of the sole proprietorship, with the exception of the dealer reserve accounts in the amount of $49,857.63, to the corporation in exchange for 100 percent of its capital stock. Since he did not transfer to the corporation his rights to the various dealer reserve accounts, no capital stock was issued to him in exchange for his rights to such reserve balances.

The petitioner at all times since January 1, 1958, has been the sole stockholder of the corporation, the new and used car sales business has been carried on in the same manner by the corporation and not by the petitioner as a sole proprietor, and the petitioner has served the corporation as its president and chief executive officer, receiving from the corporation a salary for his services.

The corporation acted as the agent of, and acknowledged its liability to, petitioner with respect to the administration of the dealer reserve accounts existing at December 31, 1957, in the aggregate amount of $49,857.63. The corporation reported on its books of account yearend balances of dealer reserve accounts for the years 1958 through 1963 in the respective amounts of $47,309.26, $46,565.61, $46,876.97, $38,186.83, $32,679.60, and $37,404.11.

The corporation has maintained its books of account on an accrual method of accounting. However, it reported at the end of the years 1958 and 1959 only the net cash released by the finance companies from the dealer reserve accounts instead of the amount withheld as a loss reserve by the finance companies from the purchase price of the corporation's installment paper.

In 1958 and 1959 the corporation received from the various financial institutions the respective amounts of $81,147.65 and $87,462.80, which amounts were reported as income on its respective income tax returns for those years.

The corporation's dealer reserve holdbacks from its sales occurring in 1958 and 1959 were in the respective amounts of $78,599.28 and $86,719.15.

The corporation, therefore, reported income for the years 1958 and 1959 in the amount of $3,292.02 in excess of the aggregate amount of the dealer reserve holdbacks from its sales during those years.

Since the corporation reported more than the amounts withheld, it follows that it received and reported as its own income cash released by the finance companies which constituted a release of all or a portion of the dealer reserve accounts at December 31, 1957. As the balance in the dealer reserve accounts on December 31, 1957, was the personal property of the petitioner, and as the corporation acted only as the agent of petitioner in the administration of these accounts, it follows that the corporation erroneously reported as its own income what should have been reported by the petitioner in his individual capacity.

By reason of the fact that it was difficult to trace the cash receipts so reported by the corporation to pre-January 1, 1958, and post-January 1, 1958, holdbacks, the corporation assumed a first-in first-out method of accounting and requested a refund of the taxes it had paid in the year 1958 on the inclusion of the entire December 31, 1957, dealer reserve balance in the amount of $49,857.63 in its income for the year 1958. This refund was allowed by the Internal Revenue Service and taxes paid by the corporation on the inclusion of $49,857.63 as income for the year 1958 were refunded to the corporation.

The portion of the reserve accounts released to the corporation by the finance companies in the years 1958 and 1959 in the total amount of $168,610.45 was used by the corporation in the operation of its business, and no portion of the released funds was returned to the petitioner by the corporation in satisfaction of its obligation to the petitioner.

Prior to the decision of the Supreme Court on June 22, 1959, in *Commissioner* v. *Hansen*, 360 U.S. 446, there had been a conflict of view among the courts as to whether amounts retained by finance

companies and credited to dealer reserve accounts should be accrued as income by a dealer on the accrual method of accounting in the year the amounts were credited or in the year of actual payments to the dealer. In the *Hansen* case the Supreme Court held that such amounts constituted accrued income at the time the withheld amounts were entered on the books of the finance companies as liabilities to the dealers.

Following the decision of the Supreme Court in the *Hansen* case, Congress enacted the Dealer Reserve Income Adjustment Act of 1960, 74 Stat. 124, as a relief measure for qualifying dealers who had not been reporting the dealer reserve credit as income at the time credited. It provides for two elections in the case of a person to whom the Act applies. Such a person might elect to have the change to the proper method of reporting treated under section 481 of the Internal Revenue Code of 1954 as a change in method of accounting not initiated by the taxpayer, or he could elect to have such change not treated as a change in method of accounting to which section 481 applies, in which case he might also elect to pay any resulting net increase in tax in annual installments over a period of from 2 to 10 years.

The corporation filed amended returns under the Dealer Reserve Income Adjustment Act of 1960 in which were reported the amounts withheld by the finance companies, rather than the amounts of cash released to the corporation, as follows:

| Year | Original return (released amounts) | Amended returns (released amounts— after refund for 1958) | Amended returns under 1960 Act (withheld amounts) |
|---|---|---|---|
| 1958 | $81,147.65 | $31,290.02 | $78,599.28 |
| 1959 | 87,462.80 | 87,462.80 | 86,719.15 |
| Total | 168,610.45 | 118,752.82 | 165,318.43 |

The corporation elected to pay the tax arising by reason of the inclusion of the difference between the amounts withheld by finance companies and the amounts of cash released to the corporation in the years 1958 and 1959 in installments, as allowed under the Dealer Reserve Adjustment Act of 1960. Such election was not challenged by the respondent.

The petitioner on or after October 27, 1960, filed an amended return for the taxable year 1957 under the Dealer Reserve Income Adjustment Act of 1960 in which was reported as additional income the balance of the dealer reserve accounts at December 31, 1957, in the amount of $49,857.63, resulting in an additional tax of $26,816.94 and interest of $3,820.31 to August 30, 1960, or a total of $30,637.25.

On August 30, 1960, the petitioners made a timely election, under section 4(a) of the Dealer Reserve Income Adjustment Act of 1960, to have a change in the treatment of the dealer reserve income treated

as not a change in method of accounting to which section 481 of the Internal Revenue Code of 1954 applies and also an election under section 4(b) of the Act to pay the increase in tax in 10 equal annual installments.

In the notice of deficiency for the taxable year 1957 the respondent determined that the petitioners were not persons to whom the Dealer Reserve Income Adjustment Act of 1960 applies and that accordingly they might not elect to pay their tax in installments as provided by section 4 of that Act.

No notice and demand from the Secretary of the Treasury, or his delegate, has been served on the petitioners, pursuant to paragraph 4(f) of the Dealer Reserve Income Adjustment Act of 1960.

In their joint income tax return for the taxable year 1958 the only income reported by the petitioners was $24,000 of salary or wages paid to the petitioner by the corporation.

The Dealer Reserve Income Adjustment Act of 1960 provides in pertinent part as follows:

SECTION 2. PERSONS TO WHOM THIS ACT APPLIES.

This Act shall apply to any person who, for his most recent taxable year ending on or before June 22, 1959—

(1) computed, or was required to compute, taxable income under an accrual method of accounting,

(2) treated any dealer reserve income, which should have been taken into account (under the accrual method of accounting) for such taxable year, as accruable for a subsequent taxable year, and

(3) before September 1, 1960, makes an election under section 3(a) or 4(a) of this Act.

\*      \*      \*      \*      \*      \*      \*

SEC. 4. ELECTION TO HAVE SECTION 481 NOT APPLY; PAYMENT IN INSTALLMENTS.

(a) GENERAL RULE.—If a person to whom this Act applies makes an election under this subsection, then for purposes of chapter 1 of the Internal Revenue Code of 1954 (and the corresponding provisions of prior law) a change in the treatment of dealer reserve income to a method proper under the accrual method of accounting shall be treated as not a change in method of accounting in respect of which section 481 of the Internal Revenue Code of 1954 applies. Any election under this subsection shall apply to all taxable years ending on or before June 22, 1959 (whether the provisions of the Internal Revenue Code of 1954 or the corresponding provisions of prior law apply), for which the assessment of any deficiency, or for which refund or credit of any overpayment, whichever is applicable, was not, on June 21, 1959, prevented by the operation of any law or rule of law.

(b) ELECTION TO PAY TAX IN INSTALLMENTS.—

(1) ELIGIBILITY.—If the net increase in tax (as defined in paragraph (2)) which results solely from the effect of the election provided by subsection (a) exceeds $2,500, then the taxpayer may elect (at the time the election is made under subsection (a)) to pay in two or more (but not to exceed 10) equal

annual installments any portion of such net increase which (on the date of such election) is unpaid.

(2) NET INCREASE IN TAX DEFINED.—For purposes of this section, the term "net increase in tax" means the amount (if any) by which—

(A) the sum of the increases in tax (including interest) for all taxable years to which the election applies and which is attributable to the election, exceeds

(B) the sum of the decreases in tax (including interest) for all taxable years to which the election applies and which is attributable to the election.

\* \* \* \* \* \* \*

(f) TERMINATION OF INSTALLMENT PAYMENT PRIVILEGE.—The extension of time provided by this section for payment of tax shall cease to apply, and any unpaid installments shall be paid upon notice and demand from the Secretary of the Treasury or his delegate, if—

(1) in the case of a taxpayer who is an individual, he dies or ceases to engage in a trade or business,

The respondent determined, and maintains, that petitioner is not a person to whom the Act applies. The petitioner, on the other hand, contends that he is.

Section 2 of the Act provides that the Act shall apply to any person who, for his most recent taxable year ending on or before June 22, 1959, (1) computed, or was required to compute, taxable income under an accrual method of accounting, and (2) treated any dealer reserve income, which should have been taken into account (under the accrual method of accounting) for such taxable year, as accruable for a subsequent taxable year.

The parties agree that the petitioner's most recent taxable year ending before June 22, 1959, was the calendar year 1958. In that year the automobile business, which the petitioner had theretofore conducted as an individual, was carried on by the corporation, and therefore no amount was credited to the petitioner in any dealer reserve accounts.

The petitioner contends that the statute in question is remedial in nature,[1] that the language should be so construed as to effectuate the

---

[1] The petitioner refers to S. Rept. No. 1045, 86th Cong., 2d Sess., p. 2, which provides in part as follows:

"Your committee agrees that dealer reserve income should be reported on a proper accrual accounting basis. Nevertheless, it believes that a hardship would be created by requiring all dealers to make a transition to this method of reporting this income in 1 year. It believes that in view of the fact that the Courts of Appeals in the Third Circuit,[1] the Fourth Circuit,[2] the Fifth Circuit,[3] the Eighth Circuit,[4] and the Ninth Circuit[5] have held that the reserves were not accruable as income until the year of withdrawal of the reserve, taxpayers had sufficient reasons for not reporting this income in the earlier year. This appears to be true even though in the sixth[6] and seventh[7] circuits and in numerous Tax Court cases the holdings were to the contrary. In view of the large number of circuit court decisions in favor of the taxpayers and the fact that from 1944 to 1958 without exception the circuit court holdings were in favor of the taxpayers, your committee believes it would be unfortunate to require the dealers involved to make substantial payments of tax for these back years all in the current year. This is believed to represent a particularly difficult hardship in the case of the many small dealers in personal property who have held what for them represent substantial sums tied up in these reserves. \* \* \*"
(Footnotes omitted.)

remedial purpose, and that so construed, he is entitled to the benefit of the installment method of payment. His position is that section 2 of the Act does not require that petitioner must have generated dealer reserve income in 1958 by discounting installment paper with financial institutions; rather, that it is enough if the petitioner had on hand in the year 1958 dealer reserve accounts which should have been taken into income in a prior year. He also argues that there need not actually have been dealer reserve income in 1958 which the petitioner treated as accruable for a subsequent taxable year; rather, in view of the use of the word "any" in section 2, such section should be read as referring to the treatment which would have been accorded any such income had there been any in 1958.

We cannot agree with the petitioner's interpretation of section 2 of the Act. In our view such section plainly requires that there shall have been dealer reserve income in 1958.[2] Since the petitioner did not have such income in 1958, we are constrained to hold that he is not a person to whom the Dealer Reserve Income Adjustment Act of 1960 applies, and that hence he is not entitled to the benefit of the installment provisions of section 4(b) thereof in the payment of the tax attributable to the inclusion in income for 1957 of the dealer reserve balances in the amount of $49,857.63.

*Decision will be entered under Rule 50.*

---

[2] In *Hulond R. Ryan,* 42 T.C. 386, we stated in part:

"Petitioner's most recent taxable year ending on or before June 22, 1959, was his taxable year ending Dec. 31, 1958. For the Dealer Reserve Act to apply, petitioner, for that year, must have had dealer reserve income and treated such income, which should have been taken into account in 1958 under petitioner's accrual method of accounting, as accruable for a subsequent taxable year.

\*          \*          \*          \*          \*          \*          \*

Proof that petitioner included in income for 1958 dealer reserve income that was properly accruable in 1957 would not make the Act applicable to this petitioner. \* \* \*"