George C. Carlson, Transferee of the Assets of Inland Equipment Rental, Inc., a dissolved corporation v. Commissioner.
Carlson v. Commissioner
Docket No. 2351-65.
United States Tax Court
T.C. Memo 1967-116; 1967 Tax Ct. Memo LEXIS 145; 26 T.C.M. (CCH) 537; T.C.M. (RIA) 67116; May 23, 1967
Roland A. Suess, 314 First Ave. East, P.O. Box 1229, Williston, N. Dak., for the petitioner. Charles L. Riter, for the respondent. DAWSON
Memorandum Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of Inland Equipment Rental, Inc., for the fiscal year ended August 31, 1960, in the amount of $41,158.99, and asserted liability against petitioner as transferee of Inland. Respondent has conceded an adjustment relating to depreciation *146 expenses and such concession will be given effect in the Rule 50 computation. The only issue for decision is whether Inland Equipment Rental, Inc., a corporation on the accrual basis which did not apply for permission to change its method of accounting, may deduct as an expense the unamortized portion of prepaid truck licenses on the date of its dissolution when the licenses have a value beyond such date. All of the facts have been stipulated and are hereby found accordingly. George C. Carlson (hereinafter called petitioner) is an individual who, at the time the petition was filed herein, was a legal resident of Billings, Montana. Inland Equipment Rental, Inc. (hereinafter called Inland) was a Montana corporation organized on April 26, 1955, with its principal office located in Williston, North Dakota. Inland filed its Federal corporation income tax return for its fiscal year ended August 31, 1960, with the district director of internal revenue at Fargo, North Dakota. Inland was engaged in the truck rental business. It maintained its books on the accrual basis of accounting. On June 10, 1960, the petitioner owned 1,828 shares of Inland stock out of 1,830 shares of stock then *147 outstanding. On June 13, 1960, pursuant to a plan of dissolution adopted June 10, 1960, Inland transferred all of its assets and liabilities to its stockholders and ceased doing business. The deficiency determined by the respondent with respect to Inland, and any interest due thereon, is unpaid. The distribution of the assets to petitioner left Inland without sufficient money or assets with which to pay any deficiency in income tax, plus interest thereon, which may be determined by this Court to be due and owing by Inland. By reason of the receipt of the transferred assets, the petitioner is the transferee of Inland and is liable for the payment of any deficiency in income tax, plus interest thereon, determined to be due and owing by Inland. On June 28, 1960, the petitioner sold all of the assets transferred to him by Inland to Houck Transport Co. of Glendive, Montana, for the sum of $720,000. The contract (labeled Memorandum Agreement) between the petitioner and Houck Transport Co. provided, in part, as follows: The Party of the Second Part agrees to purchase from the Party of the First Part * * * all of the equipment including trucks, trailers, tools, equipment, new and used *148 parts, inventories, supplies, goodwill and such other prepaid items relating to the above assets such as license and prepaid insurance on buildings, which were formerly owned by Inland Equipment Rental, Inc. * * * During the period of its existence, Inland reported income and expenses on its books and for Federal income tax purposes on a taxable year ended August 31. Inland recorded on its books of account all payments for normal and annual licenses on vehicles as a prepayment. For example, a payment of $120 for license would be handled as follows: Prepaid Licenses
Cash in Bank
Jan. 1 $120 $120 Jan. 1
Each month Inland would then amortize this prepayment, as shown below, by debiting a portion to an expense account: Prepaid Licenses
License Expense $120 $10 Jan. 31
Jan. 31 $10
This same accounting method was used by Inland in computing license prepayments and expenses on its Federal income tax return from its incorporation until dissolution. On Inland's Federal income tax return for its last taxable year, it deducted the amount of $20,607.08 as an expense for licenses. On the date of Inland's transfer *149 of its assets to the petitioner, i.e., June 13, 1960, the amount of $6,920.04 remained as prepaid licenses, as shown below: Prepaid Licenses
$692.04
On the same date, June 13, 1960, this amount was expensed, as shown below: Prepaid Licenses
License Expense
$6,920.04
$6,920.04
The amount of $6,920.04 represented the unamortized portion of the payments made on or before January 1, 1960, to the States of North Dakota and Montana for 1960 vehicle license plates. All license expenses claimed by Inland for the taxable year were fully paid by it. The license expenditures made by Inland were ordinary and necessary to its business. All licenses for vehicles purchased by Inland from the taxing authorities of North Dakota and Montana were not refundable in any manner after purchase. The majority of the vehicles, with licenses attached, purchased by Houck Transport Co. from the petitioner were used during the balance of the year 1960 in the same general operational area as they had previously been used by Inland. The laws of the States of North Dakota and Montana allowed Houck Transport Co. to operate all vehicles with North Dakota *150 and Montana licenses, which had been purchased from the petitioner, until the expiration of the licenses. Inland never applied to the Commissioner of Internal Revenue for permission to change its method of accounting or the method of treatment of any item, and no permission was ever granted by the Commissioner. In the notice of liability dated February 17, 1965, the Commissioner disallowed the amount of $6,920.04 as an expense for licenses. The petitioner claims that the sum listed as prepaid licenses on the books of Inland as of June 13, 1960, had lost its useful life to Inland and to the petitioner and, having theretofore unamortized such amount, it was deductible in full when the vehicles were transferred. Respondent, on the other hand, takes the position that the deduction of $6,920.04 claimed by Inland for the licenses distorted income for the taxable year in question and was a change in the treatment of a material item, and therefore, a change in the method of accounting which had not received the prior approval of the Commissioner. Consequently, the respondent contends that the remaining unamortized cost of the licenses had value to Inland and to the petitioner and should *151 properly have been treated as an item of basis. We agree with the respondent. Section 446(a), Internal Revenue Code of 1954, provides that taxable income "shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Section 446(e) requires that prior to changing its method of accounting a taxpayer must secure the consent of the Commissioner. The term "method of accounting," as used in the statute, includes not only a change in the overall method of accounting but also a change in the treatment of a "material item." [1]
*152 Inland always kept its books on the accrual basis. It never deviated from such method and consistently recorded license payments, usually made in January each year, as prepaid expenses. The amounts so recorded were then expensed ratably at the end of each month in order to properly reflect expenses and net income for such period. Inland also prepared its Federal income tax returns on the accrual basis. The unamortized portion of the license prepayments remained as an asset on its balance sheet and the amounts debited to license expense each month were properly shown as deductions from income. However, on the date of dissolution (June 13, 1960), for the first time in its history, Inland treated the "Prepaid Licenses" account differently. The entire amount of $6,920.04 was debited to license expense and deducted on its Federal income tax return. The parties have stipulated that Inland never applied for permission to change its method of treatment of any item, nor did the Commissioner consent to such a change. Inland used a definite system of treating such expenditures. The same procedure was followed at the beginning of each year when most of the licenses were purchased and at the *153 end of each month when the proper portion was debited to expense. Once established, a practice of monthly accrual must be adhered to. See TennesseeLife Insurance Co. v. Phinney, 280 F. 2d 38, (C.A. 5, 1960), certiorari denied 364 U.S. 914. In departing from its previous practice, Inland distorted true income for the period since the entire amount of "Prepaid Licenses" was expensed, while usually and properly it would have expensed the amount over the lives of the licenses. We regard $6,920.04 as "material" under these circumstances, even though we recognize that no definite standards exist as to what constitutes a "material item." Viewed in relation to total license expense, cf. Dorr-Oliver, Inc., 40 T.C. 50, 55 (1963), and taxable income, cf. Broida, Stone & Thomas, Inc. v. United States, 204 F. Supp. 841 (N.D.W. Va. 1962), affirmed per curiam 309 F. 2d 486 (C.A. 4, 1962), the amount deducted by Inland was about 34 percent of total license expense and about 8.5 percent of its taxable income. Moreover, the distortion of income is illustrated by the fact that Houck Transport acquired the vehicles with the licenses *154 attached. The trucks were operated by Houck for the remainder of the year without the acquisition of new license plates unless the trucks were removed to another State which required the purchase of new licenses. The value of the license plates to Houck was recognized in the contract of June 28, 1960, such value being the original payments which remained unamortized. Advance rentals and lease expenses remaining on the books at the date of liquidation are not deductible by the liquidating corporation although the continued existence of the lease is fictional. Compare Wolan v. Commissioner, 184 F. 2d 101 (C.A. 10, 1950); and Plaza Investment Co., 5 T.C. 1295, 1297 (1945). Here also the dissolution of Inland did not terminate the lives of the licenses. The licenses continued to be used by Houck and they had value. We hold that the amount of $6,920.04, which remained on the books of Inland as an asset, should have been treated as an item of basis and not expensed. Cf. Post v. Commissioner, 109 F. 2d 135 (C.A. 2, 1940), affirming a Memorandum Opinion of this Court. By not so treating the item, Inland changed its method of accounting for a material *155 item without the Commissioner's consent. Therefore, we sustain the respondent. To reflect this conclusion and the concession made by respondent. Decision will be entered under Rule 50. Footnotes
1. Section 1.446-1(e)(2)(i), Income Tax Regs., provides as follows: Except as otherwise expressly provided in chapter 1 of the Code and the regulations thereunder, a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. A change in the method of accounting includes a change in the over-all method of accounting for gross income or deductions, or a change in the treatment of a material item. Consent must be secured whether or not a taxpayer regards the method from which he desires to change to be proper. Thus, a taxpayer may not compute his taxable income under a method of accounting different from that previously used unless such consent is secured.↩