**WRIGHT CONTRACTING COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,**

v.

**WRIGHT CONTRACTING COMPANY,**
Respondent.

No. 19933.

United States Court of Appeals
Fifth Circuit.

April 19, 1963.

Rehearing Denied May 29, 1963.

J. Quentin Davidson, Tom B. Slade, Columbus, Ga., Scott P. Crampton, Korner, Doyle, Worth & Crampton, Washington, D. C., Attorney for petitioner-respondent; Swift, Pease, Davidson & Chapman, Columbus, Ga., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, J. M. Morawski, Norman M. Wolfe, Harry Baum, Attys., Dept. of Justice, Crane C. Hauser, Chief Counsel, I.R.S., Washington, D. C., for respondent.

Before TUTTLE, Chief Judge, WOODBURY,* Chief Judge, and BELL, Circuit Judge.

TUTTLE, Chief Judge.

This petition for review of a decision of the Tax Court of the United States presents the question whether the Tax Court correctly held that the taxpayer was not entitled to make a change in its accounting treatment for tax purposes of substantial items of income in the nature of "retainages" from the performance of construction contracts from the method theretofore uniformly followed by it in such a manner as to omit from income during the taxable years in question such retainages where the taxpayer had always been, and continued to be, on an accrual basis of accounting, without first securing the consent of the Commissioner of Internal Revenue.

* Chief Judge of the First Circuit, sitting by designation.

With the single exception of the finding by the Tax Court that the method by which the taxpayer had kept its accounts and reported its taxes from the years 1945 through 1953, "when consistently followed, adequately and accurately reflected petitioner's income," the taxpayer agrees with all of the findings of fact made by the Tax Court. These findings of fact are therefore used as a basis of the following statement of the underlying fact situation necessary to our decision here.

"* * * Petitioner is engaged in the general contracting business in which it has many long-term contracts, and keeps its books and files its tax returns on the accrual basis of accounting for the fiscal years ending June 30. * * *

"* * * On March 14, 1955, petitioner filed claims (Form 843) for refunds for the fiscal years ended June 30, 1951 and 1952, stating that for those years its returns treated amounts of retained percentages on contracts as income in the years in which the work was performed and that the claims for refund treated such retainage as income in the year in which the work was finished and finally accepted by the contracting authority. On March 15, 1955, petitioner filed an application for tentative carry-back adjustment on account of unused excess profits credit from the fiscal year ended June 30, 1954, to the preceding taxable year ended June 30, 1953.

"* * * In carrying on its general contracting business petitioner's principal line of work is on highways, streets, sewer lines, airports, grading, drainage, and paving. In such work petitioner moves earth, makes fills, grubs trees, and lays asphalt and concrete. Petitioner contracts for work primarily in the various southeastern states. It generally has from 30 to 40 different jobs within a year and several jobs in process at the same time. * * *

"Many of the long-term contracts under which the petitioner was engaged during the years involved provided that as the work progressed the petitioner was to be paid at certain times for the work actually done and based on the contract unit prices and, further, that out of such progress payments a certain percentage could be retained by the party for whom the work was done until the completion and final acceptance of the entire work covered by the contract. The 'retainage' was withheld from *amounts due petitioner for work performed* in order to insure the proper performance and completion of the contract in accordance with prescribed standards.

"The following provision is representative of a provision found in the long-term contracts under which petitioner performed work for various subdivisions and agencies of the United States Government:

"'7. Payments to Contractors.— (a) Unless otherwise provided in the specifications, progress payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, or at more frequent intervals *as determined by the contracting officer, on estimates approved by the contracting officer.* In preparing estimates the material delivered on the site and preparatory work done may be taken into consideration. (Emphasis added)

"'(b) In making such progress payments there shall be retained 10 per cent on the estimated amount *until final completion and acceptance of all work* covered by the contract: Provided, however, That the contracting officer, at any time after 50 per cent of the work has been completed, if he finds that satisfactory progress is being made, may make any of the remaining progress payments in full: And provided further, That on completion and acceptance of each separate building, vessel,

public work, or other division of the contract, on which the price is stated separately in the contract, payment may be made in full, including retained percentages thereon, less authorized deductions. (Emphasis added)

"'(c) All material and work covered by progress payments made shall thereupon become the sole property of the Government, but this provision shall not be construed as relieving the contractor from the sole responsibility for all materials and work upon which payments have been made or the restoration of any damaged work, or as a waiver of the right of the Government to require the fulfillment of all of the terms of the contract.

"'(d) Upon completion and acceptance of all work required hereunder, the amount due the contractor under this contract will be paid upon the presentation of a properly executed and duly certified voucher therefor, after the contractor shall have furnished the Government with a release, if required, of all claims against the Government arising under and by virtue of this contract, other than such claims, if any, as may be specifically excepted by the contractor from the operation of the release in stated amounts to be set forth therein. If the contractor's claim to amounts payable under the contract has been assigned under the Assignment of Claims Act of 1940, 54 Stat. 1029 (41 U.S.C. Sec. 15), a release may also be required of the assignee at the option of the contracting officer.'

"The petitioner's contracts with various state governments and subdivisions thereof and with cities and municipalities contained provisions essentially similar to those quoted above providing for the contracting governmental body to withhold a percentage of work progress payments until completion and final acceptance of the entire work covered by the contract.

"The petitioner had amounts of 'retainage' on long-term contracts at the end of each of the fiscal years ended June 30, 1945, to June 30, 1954, inclusive as follows:

| "Fiscal Year Ended June 30 | Amount of 'Retainage' |
|---|---|
| 1945 | $ 163,871.74 |
| 1946 | 151,963.69 |
| 1947 | 268,822.38 |
| 1948 | 213,783.89 |
| 1949 | 255,040.56 |
| 1950 | 244,557.72 |
| 1951 | 510,319.91 |
| 1952 | 612,136.63 |
| 1953 | 535,742.91 |
| 1954 | 1,066,951.18 |

"The petitioner, from its incorporation through the fiscal year ended June 30, 1954, accrued on its books and records the amounts retained from earnings on long-term contracts as income in the year the work was performed. Petitioner deducted its overhead expenses and direct expenses in connection with its long-term contracts as the expenses accrued. It treated the retained amounts as accounts receivable at their face value and any retainage petitioner failed to collect was charged off. The same firm of certified public accountants has prepared petitioner's income tax returns since its incorporation in 1942, and in connection therewith has made an annual audit of petitioner's books since about 1945 or 1946. This system of accounting, when consistently followed, adequately and accurately reflected petitioner's income.

"On its Federal tax returns from incorporation in 1942 through its fiscal year ended June 30, 1952, the petitioner reported amounts retained from earnings on long-term contracts as income in the year the work was performed. Further, petitioner's income tax returns for years prior to and including the fiscal year

ended June 30, 1950, were closed on that same basis of accounting.

"On its tax return for the fiscal year ended June 30, 1954, the petitioner did not report amounts retained during that year from its earnings on long-term contracts for work performed during the year. The petitioner has never received permission from the Commissioner of Internal Revenue to change its method of reporting income from long-term contracts.

"In the statutory notice of deficiency and with respect to the fiscal years ended June 30, 1951, 1952, and 1953, the respondent determined petitioner's tax liability on the basis of including in income the retainage on long-term contracts in the year the work was performed, i. e., the same basis as petitioner reported. With respect to the fiscal year ended June 30, 1954, the respondent increased petitioner's reported gross income by including the amount of $531,208.25 as representing the difference between the $1,066,951.18 retainage at the end of the year over the amount of retainage at the beginning of the year. Respondent determined that such amount of retainage on work performed in that year was properly includible in income of petitioner on the accrual basis. Respondent further determined that petitioner should continue to use the method of reporting which it had consistently used on its books for all years and also on its tax returns for taxable years

prior to the fiscal year ended June 30, 1954.

"The parties herein are agreed that the above-mentioned amounts of retainage at the end of the fiscal years ended June 30, 1945, to June 30, 1953, inclusive, and $908,489.06 of the amount of retainage at June 30, 1954, were on various contracts as to each of which the entire contract had not been finally accepted at the end of those years, respectively."

The applicable statutory provisions are Sections 41 and 42 of the Internal Revenue Code of 1939.[1] The taxpayer pitches its appeal on the basic premise that the amount of the retainages provided for in the contract provisions above cited, even though the taxpayer had for ten years, for its own accounting purposes as well as for tax purposes, treated them as properly accruable, could not legally be accrued during the year the work was performed, but could be accrued only when the contract was finally completed in all respects and accepted by the owner. It follows, according to taxpayer's argument, then, that it not only had the right to correct the treatment of this item of income, but it had the duty to do so. Being faced with such obligation, it says, and the change being one not of a "system" of accounting but one of changing certain items of income within the accrual method of accounting to conform to the legal requirements, Section 41 of the Act does not require the Commissioner's consent.

The Commissioner, on the other hand, pointing to the fact that the Tax Court reviewed the opinion in question and ap—

I. "§ 41. General rule

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method

as in the opinion of the Commissioner does clearly reflect the income. * * *

"§ 42. Period in which items of gross income included

"(a) General rule. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *"

proved it without dissent and thus resolved any conflicts that may appear to exist as between the opinion here and that in other earlier decisions, typically American Can Company, 37 T.C. 198, takes the position that the method of reporting the income under the accrual method followed by the taxpayer over the years was the correct method; further, even if it is not technically correct it nevertheless truly represents taxpayer's income and, therefore, it is a permissible method under the precise language of Section 41 which clearly provides that for tax purposes the net income shall be computed "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer," except where "the method employed *does not* clearly reflect the income," (Emphasis added) in which event, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income; further, even though the treatment given this income by the taxpayer is legally impermissible it may not be changed except by consent of the Commissioner who has the right under the statute to require appropriate adjustments to be made to prevent distortion of the taxpayer's taxable income for the year of change.

 ⸱ We think that petitioner's argument founders on its major premise. We find no basis for taxpayer's argument that it is not permissible for a taxpayer positioned as is the Wright Contracting Company, which is on an accrual basis for all accounting purposes, to report as income during the year in which estimates of partial completion of contracts are submitted and approved by the owner (the United States Government or State Government or Municipal Authorities with whom the Company had the

major part of its contracts) the entire amount which, under the contract, became due upon the approval of such certificates, including the 10% which the owner was permitted to retain. This retainage was not, it will be noted, to guarantee that what the company claimed and what the owner's certificate warranted partial payment for was up to the contract terms, but was to stand as a fund to guarantee "final completion and acceptance of all work covered by the contract." [2]

The Tax Court case of Charles F. Dally, 20 T.C. 894, affirmed on other issues 9th Cir., 227 F.2d 724, Cert. Denied 351 U.S. 908, 76 S.Ct. 699, 100 L.Ed. 1444, doesn't touch the question before us. What the Tax Court held there was that the taxpayer *"did not have to* accrue in 1942 ten percent of the periodical estimate submitted in that year." It did not hold that it could not, if it considered it truly reflective of its income for the year, accrue such amounts during the year when the estimates were approved.

Nor did the Court of Appeals for the Tenth Circuit in United States v. Harmon, 205 F.2d 919, hold that a method of accruing such payments at the time the estimates were approved and 90% of them paid would be illegal and impermissible if that method of reporting them truly reflected the income of the taxpayer.

The petitioner here criticizes the finding of the Tax Court that "this system of accounting, when consistently followed, adequately and accurately reflected petitioner's income." The taxpayer contends that rather than being a finding of fact this is a conclusion of law, and a wrong one at that. We disagree. We think it is a finding of fact based on adequate evidence in the record which shows

---

2. Of course, if it should later develop that a part of the work as to which the owner had approved estimates proved to be defective and the taxpayer had to expend time and money to rectify the work, the retainages would also be a fund out of which the owner could make itself whole upon failure of the taxpayer to cor-

rect such work. However, it is plain that the retainage was for the protection of the owner as a fund which it could look to to guarantee the final completion of the contract without particular reference to the percentage of completion for which estimates were approved.

254

that over the ten year period in which the taxpayer consistently followed the method of reporting as income the entire amount of the estimates, including the 10% as accounts receivable, and later deducting any amount that had to be expended before the actual payment of the retainages, the amounts actually ultimately received closely approximated the retainages reported. It was clear that the taxpayer considered this a true reflection of its annual profit.

We think that under the circumstances of this case the reasoning of the Supreme Court in Commissioner v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360, should control. We think that the amount retained by the owners here stood in no different position than the amounts retained by buyers on the retention of title contracts in issue in the Hansen case, and we think the language of the Court there is apposite here, "To permit accrual basis taxpayers to escape accrual and taxation, in a particular year, of such portions of their sales as they permit to be retained by buyers, as collateral security, well might violate § 42 (a) of the 1939 Internal Revenue Code as amended, and, moreover, might well afford opportunities to accrual basis taxpayers to allocate income to years deemed most advantageous." 360 U.S. 446, 467, 79 S.Ct. 1270, 1281.

Moreover, we are impressed with the decision of the Court of Appeals for the Third Circuit in Commissioner v. O. Liquidating Corporation, 292 F.2d 225, cert. Denied, 368 U.S. 898, 82 S.Ct. 177, 7 L.Ed.2d 94. In that case the Court, reversing a decision of the Tax Court, held that an accrual basis taxpayer could not change its method of accounting for a material item of gross income without consent of the Commissioner, regardless of the correctness of the change. The Court said, 292 F.2d page 230, " * * * while taxpayer did not change its overall method of accounting it did change its treatment of a significant item * * and * * * its action constituted a change in the method of accounting within the meaning of the Treasury Regula-

tions." See also Lord v. United States, 9th Cir., 296 F.2d 333.

As we have stated above, since the taxpayer's method of reporting income truly reflected its income we agree with the further language from the decision of the Court in the O. Liquidating Corporation case: "It is not dispositive that taxpayer's former consistent method of reporting the insurance dividends in the instant case was not correct under the accrual accounting system since it could not be changed without the Commissioner's prior consent."

We think this language is consistent with the exact wording of Section 41 of the 39 Code.

The Tax Court wrote a well reasoned opinion which was reviewed by the entire Court. We agree with the basis on which it placed its decision touching on this point. Finding, as we do, that the findings of fact by the Tax Court are all amply supported in the record and that the conclusions reached by the Court are in accord with the better reasoned decisions, we conclude that its judgment must be

Affirmed.